**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BOARD OF TRUSTEES of the PLUMBERS, PIPE FITTERS & MECHANICAL EQUIPMENT SERVICE, LOCAL UNION NO. 392 PENSION FUND *et al.*,

Plaintiffs,

vs.

CAMPBELL'S READY-TO-GO EXCAVATION, SITE UTILITIES AND PLUMBING, LLC,

Defendant.

Case No. 1:09-cv-47

Chief Judge Susan J. Dlott
Magistrate Judge Timothy Black

**REPORT AND RECOMMENDATION[1] THAT:**
**(1) DEFENDANT'S MOTION TO WITHDRAW AS ATTORNEY (Doc. 26) BE GRANTED; (2) PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. 21) BE GRANTED; AND (3) THIS CASE BE CLOSED**

This civil action is before the Court on Plaintiffs' motion for summary judgment. (Doc. 21), to which motion Defendant did not respond. Also pending before the Court is Defendant's counsel's motion to withdraw with the client's consent. (Doc. 26).[2]

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] In an affidavit in support of defense counsel's motion to withdraw, Shannon Campbell, owner of Defendant business, states that Defendant has knowingly and voluntarily not submitted a memorandum in opposition to Plaintiffs' motion for summary judgment and does not intend to present any further defense in the matter. (Doc. 26, Ex. 1 at ¶¶ 8,9).

## I. BACKGROUND

Plaintiffs claim that based on the terms of the Collective Bargaining Agreement ("CBA") and the controlling Sixth Circuit precedent, Defendant is required to pay fringe benefits through the end of the collective bargaining term which ended May 31, 2009. Additionally, Plaintiffs claim that Defendant is also required to pay fringe benefits for its Working Contractors pursuant to the express requirements of the CBA.

Because Defendant did not respond to the motion for summary judgment, the Court issued an Order directing Defendant to show cause why the motion should not be construed as unopposed and granted. (Doc. 25). Defendant was ordered to respond to the show cause order by March 15, 2010, but failed to do so.

## II. UNDISPUTED FACTS[3]

1. On January 22, 2009, Plaintiffs filed their Complaint against Defendant pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA") and Section 301 of the Labor Management Relations Act (29 U.S.C. §§ 1132 and 185 (2006)). Jurisdiction is based on federal questions arising thereunder. (Doc. 9 at ¶ 1).

2. Plaintiffs are administered at 1228 Central Parkway, Suite 100, Cincinnati, Ohio 45202-7500, making venue proper in the Southern District of Ohio, Western Division. (Doc. 22, Ex. 3).

3. On March 27, 2009, Defendant filed its Answer to the Complaint. (Doc. 9).

---

[3] These are Plaintiffs' undisputed facts taken from its proposed findings of fact and conclusions of law. (Doc. 22). Defendant failed to repond to the motion for summary judgment or proposed undisputed facts, and, accordingly, the undersigned accepts Plaintiff's undisputed facts as true.

4. On or about July of 2004, Defendant agreed to be bound by the provisions of a CBA between the Union and the Mechanical Contractors Association Mechanical Equipment Service & Maintenance Bureau of Cincinnati, in effect for the period of June 1, 2003 through May 31, 2006. (Doc. 9 at ¶ 7); (Doc. 22, Ex. 3).

5. Through the CBA, Defendant became bound by the provisions of the Agreements and Declarations of Trust, which created the Plumbers, Pipe Fitters & Mechanical Equipment Service, Local Union No. 392 Pension Fund, the Plumbers, Pipe Fitters & Mechanical Equipment Service, Local Union No. 392 Health & Welfare Fund, the Plumbers, Pipe Fitters & Mechanical Equipment Service, Local Union No. 392 Sub Fund ("Trust Funds"), the Plumbers, Pipe Fitters & Mechanical Equipment Service, Local Union No. 392 Education Trust Fund ("Education Fund") and the Cincinnati Plumbing and Pipe Fitting Industry Promotion Trust Fund ("Industry Fund"). (Doc. 9 at ¶ 8); (Doc. 22; Ex 3).

6. On or about April 18, 2006, Defendant executed an Appointment of Agent whereby it appointed the Mechanical Contractor's Association of Cincinnati as its agent to bargain and negotiate on its behalf for the terms for a successor CBA for the period of June 1, 2006 through May 31, 2009. (Doc. 9 at ¶ 7); (Doc. 22, Ex. 3).

7. Through the execution of the Appointment of Agent, Defendant became bound by the terms of the successor CBA between the Union and the Mechanical Contractor's Association of Cincinnati for the period of June 1, 2006 through May 31, 2009. (Doc. 9 at ¶ 7); (Doc. 22, Ex. 3).

8. Article XVII, Section 1 of the successor CBA provides, in relevant part:

> 1. This agreement shall be effective as of June 1, 2006 and shall expire May 31, 2009. If neither party demands written consideration of a new agreement at least sixty (60) days prior to the date of expiration or prior to the expiration date of any renewal term hereof, then this agreement shall continue in full force and effect for another year and will automatically be renewable from year to year; provided however that both parties may mutually agree to alter or amend this agreement at anytime.

(Doc 22, Ex. 2).

9. Article IV, Section 5 of the prior and successor CBA provide, in relevant part:

> 5. Working Contractors. Regardless of the number of projects, only one contractor shall be permitted to work with tools, subject to all of the following conditions:
> (a) The contractor shall first obtain the consent of the Union Business Manager or Business Agent prior to the employment of a working member of the firm, which shall not be unreasonably withheld.
> (b) The contractor shall employ one or more journeymen.
> (c) The contractor member shall only work during regular working hours of the day.
> (d) The contractor shall advise the Union in writing of the identity of the contractor member who works with the tools and state his position with the contractor firm.

(Doc. 22, Ex. 2).

10. At no time did Defendant notify the Union or the Trust Funds in writing of the identity of any individual member of the firm who was working with the tools. (Doc. 22, Ex. 3).

11. Pursuant to the provisions and rates specified in the CBA, Defendant was required to make monthly reports ("Contribution Reports") of hours worked by Covered Employees and pay contributions to the Trust Funds on the basis of hours paid and to the Education Fund and the Industry Fund on the basis of hours worked. (Doc. 9 at ¶ 9); (Doc. 22, Ex. 3).

12. Pursuant to Section 502(g)(2) of ERISA and the Collective Bargaining and Trust Agreements, employers that fail to submit monthly Contribution Reports and contributions to the Trust Funds, Education Fund, and the Industry Fund, on a timely basis are responsible for the payment of liquidated damages equal to 8% of the unpaid amount, plus the reasonable attorney's fees and costs associated with enforcing the payment of contributions to the Trust Funds, Education Fund, and the Industry Fund. (Doc. 9 at ¶¶ 11, 12); (Doc. 22, Ex. 3).

13. Defendant submitted monthly Contribution Reports and contributions to the Trust Funds through the period of approximately July 2008. (Doc. 22, Ex 3).

14. On or about June of 2008, Defendant sent a letter to the Trust Funds that vaguely asserted an intent to terminate the CBA with the Union. (Doc. 22, Exs. 3, 4).

15. On or about July 10, 2008, the Trust Funds sent a letter to Defendant notifying it that it had a continuing obligation to submit Contribution Reports and payments to the Trust Funds through the end of the collective bargaining term, which ended May 31, 2009. (Doc. 22, Exs. 3, 5).

16. On or about August 5, 2008, Defendant sent a second letter to the Trust Funds that again vaguely asserted its intent to terminate the CBA with the Union. (Doc. 22, Exs. 3, 6).

17. At no time during the period of March of 2008 through May of 2009 did Defendant notify the Union of its intent to withdraw from the CBA in effect for the period of June 1, 2006 through May 31, 2009. (Doc. 22, Ex. 11).

18. Defendant was bound to the CBA until the end of the bargaining term, May 31, 2009. (Doc. 22, Ex. 11).

19. On or about August 20, 2008, the Trust Funds sent a second letter to Defendant that rejected the purported termination and reaffirmed its continuing obligation to submit monthly Contribution Reports and payments to the Trust Funds. (Doc. 22, Exs. 3, 7).

20. Defendant failed and/or refused to submit Contribution Reports and/or the associated contribution payments to the Trust Funds for the months of August through December 2008, as well as January through May 2009. (Doc. 9 at ¶ 13); (Doc. 22; Ex. 3).

21. On or about September 25, 2008, a payroll compliance audit conducted for the period of January 1, 2006 through December 31, 2007 revealed approximately $59,259.25 in contribution deficiencies due and owing the Trust Funds. (Doc. 22; Exs. 3, 8).

22. On or about November 5, 2009, a second payroll compliance audit conducted for the period of January 1, 2008 through May 31, 2009 revealed approximately $96,440.98 in contribution deficiencies due and owing the Trust Funds. (Doc. 22, Exs. 3, 9).

23. Liquidated damages have accrued in the amount of $12,456.01. (Doc. 22, Ex. 3).

24. Plaintiffs have expended approximately $19,537.27 in attorney's fees and costs in conjunction with this action against Defendant. (Doc. 22, Ex. 10).

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV. ANALYSIS

### A. Motion for Summary Judgment

Defendant's failure to respond to Plaintiff's motion for summary and the order to show cause warrants summary judgment for the Plaintiffs for failure to comply with an order of the Court. Moreover, summary judgment is also warranted on the merits.

Plaintiffs claim that this Court should enter summary judgment against Defendant because: (1) it is undisputed that Defendant was bound to the terms of the CBA with the Union through May 31, 2009; (2) it is undisputed that Defendant had a continuing obligation to submit Contribution Reports and fringe benefit contributions to the Trust Funds through May 31, 2009; and (3) as a matter of law, the Trust Funds are entitled to enforce the written terms of the CBA.

Plaintiffs brought this action against Defendant pursuant to ERISA in order to enforce the terms of the CBA and collect delinquent contributions due and owing from Defendant. (Doc. 9 at ¶ 1). Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (2006).

It is undisputed that Defendant was bound to the terms of the CBA with the Union because it could not terminate its obligations under the CBA until May 31, 2009, the end

of the collective bargaining term.

An employer may abandon the multiemployer bargaining unit only if it performs all of the following: (1) unequivocally and clearly withdraws from the association; (2) at the appropriate time; and (3) communicates the intent to withdraw to all necessary parties. *Sheet Metal Workers' Int'l. Ass'n Local 19 v. Herr Bros. Inc.,* 201 F. 3d 231, 244 (3d Cir. 1999); *N.L.R.B. v. Sklar*, 316 F. 2d 145, 150 (6th Cir. 1963). The Sixth Circuit and the NLRB have consistently held that an employer may not withdraw from a multi-employer bargaining unit prior to the expiration of the collective bargaining term. *Sklar*, 316 F.2d at 150; *W.S. Ponton of N.J. Inc. v. Office Employees Int'l Union Local 32 AFL*, 93 NLRB 924 (1951).

**1. Defendant's withdrawal from the Union was not effective until May 31, 2009, the end of the collective bargaining term**

An employer seeking to withdraw from a collective bargaining unit may do so only at the appropriate time. *Plumbers & Pipefitters Local Union No. 572 Health & Welfare Fund*, 100 Fed. Appx. at 396. Courts have consistently held that the effective date of a withdrawal is the end of the collective bargaining term, absent specific language which allows for early termination. *See e.g. NLRB v. Sklar,* 316 F.2d 145 (6th Cir. 1963). "To permit the Employer to alter its course from joint to individual action during an existing contract would not… make for that stability in collective bargaining which the [National Labor Relations] Act seeks to promote." *W.S. Ponton of N.J. Inc.*, 93 NLRB at 926; *Eng'g Metal Products Corp. v. Indep. Shopmans Union No. 1,* 92

NLRB 823 (1950); *Purity Stores Ltd. v. Warehouse Union Local No. 12 AFL*, 93 NLRB 199 (1951).

Plaintiffs contend that Defendant never expressly submitted a clear and unequivocal withdrawal from the Union. However, for purposes of this Section, the Court will assume that Defendant's vague attempts to temporarily withdraw from the Union was an attempt to terminate the CBA and escape its obligations thereunder. Based on the dates of the purported withdrawal letter, the earliest possible effective date of the withdrawal was May 31, 2009, the end of the collective bargaining term.

Defendant does not dispute that it became bound to the CBA for the period of June 1, 2006 through May 31, 2009. (Doc. 9 at ¶ 7); (Doc. 22, Ex. 11). Consistent with being bound to the CBA, Defendant submitted Contribution Reports and contribution payments to the Trust Funds through approximately July of 2008. (Doc. 22, Ex. 3). Article XVII, Section 1 of the successor CBA provides, in relevant part:

> 1. This agreement shall be effective as of June 1, 2006 and shall expire May 31, 2009. If neither party demands written consideration of a new agreement at least sixty (60) days prior to the date of expiration or prior to the expiration date of any renewal term hereof, then this agreement shall continue in full force and effect for another year and will automatically be renewable from year to year; provided
> however that both parties may mutually agree to alter or amend this agreement at anytime.

(Doc. 22, Ex. 2).

The relevant language from the CBA does not permit the parties to terminate the Agreement in the middle of the collective bargaining term. Yet, this appears to be what

Defendant was attempting to do. Defendant did not express its intent to withdraw from the Union until June of 2008. (Doc. 22, Exs. 3, 4). Based on the term of the CBA, the earliest date for withdraw was May 31, 2009. Because the CBA term did not expire until May 31, 2009, Defendant had an absolute obligation to continue submitting monthly Contribution Reports and payments to the Trust Funds through May 31, 2009. (Doc. 22, Ex. 11). Accordingly, its attempt to withdraw from the Union in June 2008 was untimely.

### 2. Defendant failed to send notice of its withdrawal to either the Union or the Mechanical Contractor's Association of Cincinnati.

In order for any employer to effectively withdraw from a multi-employer bargaining unit, notice must be sent to all interested parties. *Plumbers & Pipefitters Local Union No. 572 Health & Welfare Fund*, 100 Fed Appx. at 396. The Sixth Circuit has held that notice provided to both the Union and the employer Association is sufficient to satisfy this requirement. *Trs. of the B.A.C. Local 32 Ins. Fund v. Norwest Tile Co*., No. 04-2436, 2005 U.S. App. LEXIS 27879 (6th Cir. Dec. 14, 2005). In the instant case, it is Defendant's withdraw was not effective, because they failed to send a withdraw letter to either the Union or the employer Association.

A cursory review of the correspondence exchanged between Defendant and the Trust Funds confirms that Defendant never properly terminated its Appointment of Agent with the Mechanical Contractors Association of Cincinnati. In fact, it was the

Trust Funds that initially brought the correspondence from Defendant to the attention of the Union. However, even after being instructed as to the proper parties to notify, Defendant failed to properly notify the Union or the Mechanical Contractors Association of Cincinnati of its withdraw from the Union. (Doc. 22, Ex. 11).

In its response letter of July 10, 2008, the Trust Funds informed Defendant that the Trust Funds were not a party to the CBA and any correspondence related to the CBA should be directed to the Union and the Mechanical Contractors Association of Cincinnati, its bargaining representative. (Doc. 22, Exs. 3, 5). Despite having been informed of this fact, Defendant sent a second letter to the Fund Office in August 2008 but dated "April, 2008", which again stated its intent to "leave the Local No. 392." (Doc. 22, Exs. 3, 6). To Plaintiffs' knowledge, Defendant never terminated the Mechanical Contractors Association as its agent for bargaining.

**3. Defendant's attempt to withdraw from the Union was vague and ambiguous and failed to communicate a clear and unequivocal intent to terminate the CBA**

To effectively withdraw from the bargaining unit, an employer must submit a clear and unequivocal withdrawal. *Plumbers & Pipefitters Local Union No. 572 Health & Welfare Fund v. A & H Mech. Contrs.*, 100 Fed. Appx. 396 (6th Cir. 2004). Courts have consistently held that the withdrawing documents must communicate a sincere abandonment of the bargaining unit by the employer. *Id.* An employer may not attempt to "secure the best of two worlds" by purportedly withdrawing bargaining authority but

then remaining a member of a multiemployer unit in the hope of securing advantageous terms through group negotiations. *Sheet Metal Workers' Int'l. Ass'n Local 19*, 201 F.3d at 244.

The letters Defendant submitted to the Trust Funds do not communicate an unequivocal intent to terminate the CBA with the Union. Instead, Defendant vaguely asserted its intent to temporarily leave the Union and possibly return when its economic conditions improve. Defendant's initial correspondence of June 2008 was addressed to the "Plumbers, Pipefitter & MES Local #392 Fringe Benefits" and indicated that it was leaving the Union, but also indicated its desire "to get back in the union" in the event that "things financially get back on track." (Doc. 22, Exs 3, 4).

In an initial response letter of July 10, 2008, the Trust Funds informed Defendant of its continuing obligations to submit Contribution Reports and contribution payments to the Trust Funds through the end of the collective bargaining term, May 31, 2009. (Doc. 22, Exs. 3, 5). Notwithstanding, Defendant sent a second letter to the Fund Office in August 2008 but dated "April, 2008", which again stated its intent to "leave the Local No. 392." (Doc. 22, Exs. 3, 6). The letter also acknowledges Defendant's continuing obligations under the CBA by stating "the cost to stay in the union will put me out of business if I continue the contributions *as required*." (Doc. 22, Exs. 3, 6). Trust Funds responded in a second letter on or about August 20, 2008, which again reiterated Defendant's continuing obligations under the CBA through May 31, 2009. (Doc. 22,

Exs. 3, 7).

Defendant requested temporary relief from its obligations under the CBA and indicated its desire to return to the Union at some point in the future and resume its obligations under the CBA, once it was financially able to do so. As a result, the purported termination by Defendant was not unequivocal. Moreover, the termination was not effective until the end of the collective bargaining term. Therefore, Defendant, had an absolute obligation to submit Contribution Reports and payments to the Trust Funds until May 31, 2009. Defendant failed to submit the required payments.

The Sixth Circuit has consistently held that ERISA trust funds proceeding pursuant to Section 515, as third-party beneficiaries, are entitled to enforce the express written terms of the CBA and are exempt from many potential defenses that may be asserted in collection cases. *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F. 3d 1018 (6th Cir. 2001); *Bakery & Confectionary Union and Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co.*, 133 F. 3d 955, 959 (6th Cir. 1998) (explaining that multiemployer plans are entitled to rely on the literal terms of written commitments between the plan, the employer and the union in order increase the reliability of their income streams and reduce the cost associated with collection actions).

Here, the express written terms of the CBA clearly state that only *one* Working Contractor per signatory employer is permitted to work with the tools, and only if certain conditions are met. (Doc. 22, Ex. 2). The Initial Audit Report revealed that Defendant

had *several* Working Contractors that performed covered work during the audited periods, for which the Company failed to report or pay contributions to the Trust Funds and the Union. (Doc. 22, Exs. 3, 8, 9). Because the terms of the CBA clearly require Defendant to report and pay contributions to the Trust Funds on behalf of these individuals, there is no dispute as to the amounts owed pursuant to the payroll compliance audits conducted in this case.

In addition to its failure to report all Working Contractors and pay contributions on their behalf, it is undisputed that Defendant failed to provide the Union with written notification of any Working Contractors that worked with the tools, as required under the CBA. (Doc. 22, Ex. 3). In accordance with the express written terms of the CBA to which Defendant was bound, contributions are owed to the Trust Funds for all deficiencies revealed in the payroll compliance audits.

### B. Motion to Withdraw As Counsel

Counsel for Defendant has filed a motion to withdraw as counsel. For good cause shown, the undersigned recommends that the motion be granted.

## V. CONCLUSION

Based on the evidence of record, the undersigned finds that Defendant's motion for summary judgment is well taken as there are no genuine issues of material fact in dispute, and Defendant is entitled to entry of judgment. It is therefore **RECOMMENDED** that (1) Defendant's motion to withdraw (Doc. 26) be **GRANTED**; (2) Plaintiffs' motion for summary judgment (Doc. 21) be **GRANTED;** and (3) the case be **CLOSED.**

**IT IS SO RECOMMENDED.**

Date: April 6, 2010

s/ Timothy S. Black
Timothy S. Black
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BOARD OF TRUSTEES of the PLUMBERS, PIPE FITTERS & MECHANICAL EQUIPMENT SERVICE, LOCAL UNION NO. 392 PENSION FUND *et al.*,

Case No. 1:09-cv-47

Plaintiffs,

Chief Judge Susan J. Dlott
Magistrate Judge Timothy S. Black

vs.

CAMPBELL'S READY-TO-GO EXCAVATION, SITE UTILITIES AND PLUMBING, LLC,

Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **14 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **14 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).